## Raymond A. McPherson, Inc., v. Veneziale

*Eastburn & Gray*, for plaintiff.
*Bowen & Valimont*, for defendants.

SATTERTHWAITE, J., July 17, 1959.—Plaintiff, a licensed real estate broker and auctioneering firm, seeks to recover from defendants for the latters' refusal to permit plaintiff to sell two properties of defendants at auction as contemplated by the written listing agreements entered into by defendants with plaintiff. The present problem, arising on defendants' preliminary objection to plaintiff's amended complaint, is whether certain contract provisions reasonably specify liquidated damages payable to plaintiff in such event, or improperly set forth unenforcible penalties.

Defendants listed the two properties with plaintiff for sale at public auction pursuant to separate and respective understandings on printed forms apparently furnished by plaintiff. In each case they thereby agreed to sell the respective properties to the highest bidder at such auction. In the case of the so-called Clymer Avenue tract, the sale was to be without reserve, and plaintiff was authorized to expend up to $300 on such advertising as it might deem desirable and recover the same from defendants in addition to commissions at the rate of 10 percent of the sale price. In the case of the State Road tract, however, the sale was to be with a limit or reserve price of $30,000, advertising expenses were specifically negatived and the rate of commissions was specified at five percent of the sale price, with an express provision that no commissions would be payable thereon "if the property does not bring" the reserve price of $30,000.

The amended complaint alleges that plaintiff and defendants entered into such listing agreements and fixed a sale date therefor, that plaintiff expended $384.34 in promoting or advertising the sale, that defendants have refused "to permit the auction of the properties in accordance with the terms of the agreements", for reasons which do not appear, and that

therefore plaintiff is entitled to $2,700. The claim for damages is composed of three elements: (a) $300 for reimbursement of advertising expenses under the Clymer Avenue tract agreement; (b) $900 as "liquidated damages" under a clause of the Clymer Avenue tract agreement which provided that "if Vendor withdraws the property from sale, prior to the auction sale, Vendor will pay the Auctioneer for the services rendered to date the sum of $900 per property as liquidated damages and not as a penalty, in addition to the cost of the advertising as aforesaid", and (c) $1,500 as "liquidated damages" under a clause of the State Road tract agreement which was identical to that last quoted except in amount. Plaintiff has pleaded no special damages other than the advertising expenses.

Defendants' preliminary objection, directed to the latter two items of "liquidated damages" only and making no defense to the advertising claim, argues that the stipulated amounts represent penalties as a matter of law and hence are not recoverable.

The principles applicable to a determination of the question so raised, and many of the precedents on the subject, are collected and discussed in the opinion of this court in Britsch v. Allebach, 2 Bucks 248, 251 et seq., and need not be herein repeated. As therein noted, they are aptly and succinctly set forth in A. L. I. Restatement of the Law of Contracts, the first paragraph of which provides as follows:

"§339. Liquidated Damages and Penalties.

"(1) An. agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) The amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

While recognizing that in certain instances at least plaintiff's proof of actual damages for defendants' withdrawal of the properties from sale would be difficult and uncertain, nevertheless we believe that the contract amounts do not reasonably predict just compensation which might be due plaintiff in given circumstances coming within the terms thereof, and that therefore they do not meet the first of the two conjunctive requirements of §339, supra, and must be considered to be penalties and unenforcible.

The fatal weakness in plaintiff's position, in our opinion, is the fact that the same respective amounts would be payable no matter what might be the extent of the actual consequences of the withdrawal to plaintiff or at what stage of the services to be rendered in contemplation of the sale it might be effected. The stipulated figures might well be entirely reasonable and proper if the premises were withdrawn when the auction were actually under way and bids had been received which, if accepted, would have entitled plaintiff to commissions approximating the stipulated sums under the percentage rates agreed upon therefor. In such event, plaintiff could properly be said to have substantially carried out its part of the bargain and be reasonably entitled for services performed to amounts which would be equivalent to possible minimum commissions, as illustrated in the case of the sale with reserve where the sum stipulated exactly equaled commissions computed on the reserve price. By the same token, however, they would be grossly excessive and unconscionable if applicable to the equally possible situation where plaintiff had done little or nothing in preparation for the contemplated auction,

as where the properties had been removed from the market a comparatively short time after the listing and long in advance of the sale date. Of particular significance in this connection is the fact that the contract language refers only to "services rendered" and does not purport to extend either to possible and speculative loss of profits or to advertising' expenses, the latter being the subject of entirely independent contract provisions.

As noted in Gross v. Exeter Machine Works, Inc., 277 Pa. 363, 369-70:

"The general rule is that, where the covenant embraces the performance of several acts and a single sum is named, it will be treated as a penalty, especially so where the damages for any breach or breaches may be ascertained. In other words, where the agreement contains several matters of different degrees of importance and yet the sum named is for the breach of any, even the least, it is to be construed as a penalty and not as liquidated damages: . . . [citing cases]"

For the foregoing reasons, we believe that the amended complaint fails to state any cause of action in the respects noted in defendants' preliminary objection. The so-called "liquidated damages" clauses should be considered as imposing penalties and are therefore, under the Restatement, to be ignored and do not affect actual damages, if any there be, to which plaintiff may be entitled. Accordingly, defendants' preliminary objection should be sustained with leave to plaintiff to file a second amended complaint if it considers that that it can allege and prove special and particular damages, in addition to advertising expenses, resulting from defendants' alleged breach of contract. Inasmuch as defendants have not yet had the opportunity to answer the amended complaint on the subject of the advertising expenses, provisions will also be made therefor.

*Order*

And now, July 17, 1959, for the reasons stated in the foregoing opinion, defendants' preliminary objection is hereby sustained with leave to plaintiff to file a second amended complaint within 20 days from the date hereof. Leave is also given defendants to file an answer within 20 days after the service of such second amended complaint or within 20 days after the time for the filing of such second amended complaint shall have expired.