## Iron Trade Products Co. *v.* Wilkoff Co., Appellant.

*Contracts—Sale—Nonperformance—Difficulty of performance—Limited quantity in market—Damages—Measure of damages—Sales Act of May 19, 1915, P. L. 543, 562.*

1. If a party, seeking to secure all the merchandise of a certain character which he could obtain, enters into a contract for a quantity of such goods, and subsequently makes performance of the contract by the seller more difficult by making other purchases which increase the scarcity of the available supply, his conduct, in the absence of any intent to embarrass or interfere with the seller, will furnish no excuse to the latter for refusal to perform the contract. Mere difficulty of performance will not excuse a breach of contract.

2. Where there is an available market in which to procure goods that were not delivered, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market price at the time and place for delivery, or, if no time was fixed, then at the time of the refusal to deliver, as provided by the Sales Act of May 19, 1915, P. L. 543, 562.

3. If the vendee procures the goods elsewhere, at less than the market value, his measure of damages is limited to the amount he expended therefor in excess of the contract price.

4. If, however, he resells the goods, the price, on the resale, is not to be taken as the basis for damages for the breach of delivery, unless made part of the contract.

*Practice, C. P.—Affidavit of defense—Contradictory or equivocal averments—Sale.*

5. An affidavit of defense must be considered as a whole, and a general denial therein is of no avail. An affidavit that is contradictory or equivocal is insufficient.

6. In an action for failure to deliver goods under a contract of sale, an affidavit of defense is insufficient, which, on the question of damages, denies generally that there was any market or market price for such goods, but admits facts which show that there was a market price.

Argued October 12, 1921. Appeal, No. 56, Oct. T., 1921, by defendant, from order of C. P. Allegheny Co., Jan. T., 1921, No. 216, making absolute rule for judg-

ment for want of a sufficient affidavit of defense, in case of Iron Trade Products Co. v. Wilkoff Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of contract to deliver steel rails.

Rule for judgment for want of a sufficient affidavit of defense. Before REID, J.

The opinion of the Supreme Court states the facts.

Rule absolute. Defendant appealed.

*Error assigned,* among others, was order, quoting it.

*A. O. Fording,* for appellant.—One who impedes the performance of a contract by another, cannot take advantage of his own wrong to prevent a recovery: Kress Co. v. Hogg Co., 263 Pa. 191, 195; U. S. v. Peck, 102 U. S. 64.

If plaintiff was entitled to recover at all, he was entitled only to the amount of profit that he would have made on the resale to which he was committed, after our full performance.

Even if there had been no waiver of damages on part of the second vendee in favor of his vendor, the rule of market value could not be applied in our case because there was no market, and no price or value referable to a market: Theiss v. Weiss, 166 Pa. 9; Seward v. Pa. Salt Mfg. Co., 266 Pa. 457.

*E. B. Strassburger,* for appellee.—Default in delay is not excused because performance has become difficult, dangerous or burdensome: Beecher v. Stein, 139 Pa. 570; Chicago, M. & St. P. R. R. v. Hoyt, 149 U. S. 1.

The measure of damages claimed is correct and the denial thereof contradictory and evasive: Honesdale Ice Co. v. Imp. Co., 232 Pa. 293; Arnold v. Blabon, 147 Pa. 372; Seward v. Mfg. Co., 266 Pa. 457; Theiss v. Weiss, 166 Pa. 9; Morris v. Supplee, 208 Pa. 253, 260.

It is of no concern to a defaulting seller what disposition a buyer intended to make of the goods sold, or what settlement he has made of his contract to resell the same: Seward v. Mfg. Co., 266 Pa. 457.

OPINION BY MR. JUSTICE WALLING, January 3, 1922:

In July, 1919, plaintiff entered into a written contract with defendant for the purchase of twenty-six hundred tons of section relaying rails, to be delivered in New York harbor at times therein specified, for $41 a ton. Defendant failed to deliver any of the rails and plaintiff brought this suit, averring, by reason of such default, it had been compelled to purchase the rails elsewhere (two thousand tons thereof at $49.20 per ton and six hundred tons at $49 per ton), also that the market or current price of the rails at the time and place of delivery was approximately $50 per ton, and claiming as damages the difference between what it had been compelled to pay and the contract price. Defendant filed an affidavit of defense and a supplement thereto, both of which the court below held insufficient and entered judgment for plaintiff; from which defendant brought this appeal.

In effect, the affidavit of defense avers the supply of such rails was very limited, there being only two places in the United States (one in Georgia and one in West Virginia) where they could be obtained in quantities to fill the contract, and that, pending the time for delivery, defendant was negotiating for the required rails when plaintiff announced to the trade its urgent desire to purchase a similar quantity of like rails, and, in fact, bought eight hundred and eighty-seven tons and agreed to purchase a much larger quantity from the parties with whom defendant had been negotiating; further averring this conduct on behalf of plaintiff reduced the available supply of relaying rails and enhanced the price to an exorbitant sum, rendering performance by defendant impossible. The affidavit, however, fails to aver knowledge on part of plaintiff that the supply of rails was

limited or any intent on its part to prevent, interfere with or embarrass defendant in the performance of the contract; and there is no suggestion of any understanding, express or implied, that defendant was to secure the rails from any particular source, or that plaintiff was to refrain from purchasing other rails; hence, it was not required to do so. The true rule is stated in Williston on Contracts, p. 1308, as quoted by the trial court, viz: "If a party seeking to secure all the merchandise of a certain character which he could, entered into a contract for a quantity of the required goods, and subsequently made performance of the contract by the seller more difficult by making other purchases which increased the scarcity of the available supply, his conduct would furnish no excuse for refusal to perform the prior contract." Mere difficulty of performance will not excuse a breach of contract: Corona C. & C. Co. v. Dickinson, 261 Pa. 589; Janes v. Scott, 59 Pa. 178; 35 C./c. 245. Defendant relies upon the rule stated in United States v. Peck, 102 U. S. 64, that, "The conduct of one party to a contract which prevents the other from performing his part is an excuse for nonperformance." The cases are not parallel; here, plaintiff's conduct did not prevent performance by defendant, although it may have added to the difficulty and expense thereof. There is no averment that plaintiff's purchases exhausted the supply of rails, and the advance in price caused thereby is no excuse. The Peck case stands on different ground, there Peck contracted to sell the government a certain quantity of hay for the Tongue River station, and the trial court found it was mutually understood the hay was to be cut on government lands called "the Big Meadows," in the Yellowstone Valley, which was the only available source of supply; also that thereafter the government caused all of that hay to be cut for it by other parties. In view of this Peck was relieved from his contract.

The affidavit "denies that there was any market or market price, or current price for such relaying rails,"

at any time from the date of the contract to the beginning of this suit, but other statements therein amount to an admission of a market price. For example, it speaks of "the trade in Pittsburgh, New York and other centers of such trade," also of "the very small quantity of such rails in the market." The affidavit further states that, "After making the said contract with the plaintiff the defendant began negotiations with the persons from whom the said rails in Georgia and West Virginia might be purchased; and in each of the two cases referred to such negotiations had proceeded so far that defendant could have purchased twenty-six hundred tons of such rails either in Georgia or West Virginia, at some such price as that contracted to the plaintiff, or less, or not greatly in excess thereof.

"In fact the plaintiff bought a quantity of such rails, to wit, eight hundred and eighty-seven tons, and at one time had contracted for the purchase of a much larger quantity thereof, from the same persons with whom the defendant had been negotiating for the same, and at higher prices than had been offered to the defendant by the same persons within the term of the said contract.

"And affiant, while denying as aforesaid that the plaintiff was compelled to purchase the said rails or any of them, avers that if the plaintiff was so compelled it was only as the result of plaintiff's own interference with the defendant's performance of the said contract; and avers that but for the said interference the defendant would have made full performance of its said contract."

The above, and the admitted facts that plaintiff actually bought the twenty-six hundred tons and had previously resold the same, indicate a market value, and the specific averment thereof in the statement of claim is not sufficiently denied in the affidavit. An affidavit of defense must be considered as a whole, and therein a general denial is of no avail against an admission of the same fact. An affidavit that is contradictory or equivo-

cal is insufficient: see Noll v. Royal Exchange Assurance Corp., 76 Pa. Superior Ct. 510.

The supplemental affidavit avers that, when the contract in suit was made, plaintiff, to the knowledge of defendant, had resold the twenty-six hundred tons of rails at $42.25 per ton and, furthermore, that the purchaser at such resale released plaintiff from all claim for damages under the contract. In an action by a vendee for failure to deliver goods according to contract, the usual measure of damages is the difference between the contract price and the market value at the time and place of delivery: Seward v. Pa. Salt Mfg. Co., 266 Pa. 457, 461, and cases there cited; also Hauptman v. Pa. W. Home for Blind Men, 258 Pa. 427. This rule is stated in clause 3d of section 67 of the Sales Act of May 19, 1915, P. L. 543, 562, as follows, viz: "Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

However, where in such case the vendee procures the goods elsewhere, at less than the market value, his measure of damages is limited to the amount he expended therefor in excess of the contract price: Theiss v. Weiss, 166 Pa. 9, 19; Morris v. Supplee, 208 Pa. 253, 260. Defendant contends the rule of damages above stated does not apply here because of plaintiff's contract for resale, and that in no event can plaintiff recover more than would have been its profits thereon. In support of which Trigg v. Clay, 88 Va. 330, is cited. That decision, however, is expressly based upon the absence of a market at which lumber, similar to that contracted for, could have been obtained. For that reason, the price at which plaintiff had resold the lumber was accepted as a satisfactory basis for ascertaining his damages. To like ef-

fect is B. P. Ducas Co. v. Bayer Co., 163 N. Y. S. 32. Defendant also cites Foss v. Heineman, 144 Wis. 146, which, while not in all respects parallel, may seem to support its contention; even so, we cannot follow it in view of our own rule as above stated. Plaintiff's vendee was not a party to the contract in suit, nor mentioned therein; and, while the rails in question were seemingly intended for him, other like rails would have filled his contract. The fact that a vendee has resold the goods contracted for is of no moment unless made a part of the contract; for, if not, he is entitled to the benefit of his bargain, regardless of the disposition he may intend to make of the property involved. To hold otherwise would inject collateral issues in trials for breaches of such contracts.

The assignments of error are overruled and the judgment is affirmed.